# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-0949

JOHN T. KING, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 11, 2013                         Decided February 26, 2014)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Karl A. Kazmierczak*, of Oakland, New Jersey, was on the brief, for the appellant.

*Selket N. Cottle*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, LANCE, and BARTLEY, *Judges*.

HAGEL, *Judge*: John T. King appeals through counsel a January 11, 2012, Board of Veterans' Appeals (Board) decision that denied his motion to revise a final January 1973 VA regional office decision on the basis of clear and unmistakable error. The 1973 decision granted a 10% disability rating for schizophrenia. Mr. King's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). This case was referred to a panel of this Court because the Court lacks a recent precedential opinion regarding the interpretation of whether an alleged error would have "manifestly changed the outcome" of a Board or regional office decision in the context of clear and unmistakable error. Because the Board's determination that the January 1973 regional office decision did not contain clear and unmistakable error is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and

because the Board provided an adequate statement of reasons or bases for its decision, the Court will affirm the January 11, 2012, Board decision.[1]

## I. BACKGROUND

Due to the procedural history of this case, the Court finds that providing a short background will properly frame the issue raised by Mr. King. In July 1972, Mr. King filed a claim for VA disability benefits. Record (R.) at 1876. In January 1973, a VA regional office issued a decision that granted Mr. King entitlement to VA disability benefits for schizophrenia and assigned a 10% disability rating. Mr. King did not appeal this decision and it became final.

Mr. King now appeals the January 2012 Board decision that denied his motion to revise the January 1973 regional office decision on the basis of clear and unmistakable error. Mr. King underwent a number of psychiatric examinations between 1973 and the date of the current Board decision under review; however, only two examinations are relevant to the present appeal. The two relevant reports are that of Mr. King's private treating psychologist, Dr. Michael Rothburd, and VA physician Dr. Phillip Ross, both conducted in 1972 prior to the January 1973 rating decision. These are the two examinations addressed by the parties and relevant to the issues raised on appeal; accordingly the Court will limit its recitation of facts to these two medical opinions.

## II. FACTS

Mr. King served on active duty in the U.S. Army from July 1969 to December 1971.

In July 1972, Mr. King filed a claim for VA disability benefits for a "nervous condition." R. at 1876.

In August 1972, Michael Rothburd, Ph.D., a private psychologist, diagnosed Mr. King with "[c]hronic undifferentiated schizophrenia [pseudo-psychopathic schizophrenia]" and "passive aggressive personality disorder." R. at 1862. Dr. Rothburd stated the following:

> [Mr. King] seen in individual and family (x3) psychotherapy on a weekly basis from Dec[ember] 1971 to May [] 1972, then in group psychotherapy on a spora[d]ic basis total[]ing [six] group therapy sessions, until present. Individual psychotherapy was

---

[1]On December 3, 2013, and December 4, 2013, the Secretary submitted motions to supplement the record, which were held in abeyance at that time. The Court hereby grants those two motions.

terminated by mutual agreement based on financial considerations, when Mr. King's finances became severely depleted and he wished to incur no further debt. His progress [un]til then was gradual and positive. There has been a marked decline following termination of individual therapy and some, but not all[,] of his behavior pathology has returned. During this course of therapy, I referred the patient to Dr. J.B. Joyce, an osteopathic psychiatrist . . . for medication.

R. at 1862. Dr. Rothburd noted his clinical findings and Mr. King's symptomology as follows:

Depersonalization, depression, anxiety, paranoid ideation, regression. Inability 1) to work, 2) interact with others, 3) relate to peers, [and] enter into a heterosexual relationship. Behavior disorder represents a major disability for this patient He is frequently incapacitated due to the psychotic proportions of the disorder[;] however[,] hospitalization probably would be ineffective. Institutionalization would be a likely result.

*Id.*

Mr. King was hospitalized at a VA medical center for psychiatric conditions between August 24, 1972, and September 1, 1972. R. at 1854. During this 7-day period, Mr. King was observed by VA physician J.F. Ross, M.D., who reported his observations of Mr. King during that period. In September 1972, Mr. King underwent a VA psychiatric examination. After reviewing Mr. King's social and medical history and conducting a physical examination, Dr. Ross diagnosed Mr. King with "schizophrenia, latent type." R. at 1854. The examiner also noted Mr. King's progress while in the hospital:

Despite his alleged difficulty in relating to people[,] the patient seemed to get along very well with patients [in] the ward. Then [sic] very astute observations about some of the other patients and seemed unusually per[]ceptive. We discussed his anxiety about becoming involved in any kind of long term relationship, let alone a close relationship and after cluing me to his apprehension about this[,] he went on [a] weekend pass and returned impulsively to sign out against medical advice.

*Id.*

In January 1973, the regional office issued a decision granting Mr. King VA disability benefits for schizophrenia, with a 10% disability rating. R. at 1827. Mr. King did not appeal this decision, and it became final.

In September 2006, Mr. King sought to revise the January 1973 regional office decision on the basis of clear and unmistakable error. R. at 648. Mr. King asserted that the regional office erred by failing to consider Dr. Rothburd's August 1972 opinion.

3

In March 2007, the regional office issued a decision finding that the January 1973 regional office decision did not contain clear and unmistakable error. Mr. King filed a Notice of Disagreement with that decision and ultimately appealed to the Board.

In January 2009, the regional office issued a Supplemental Statement of the Case (that generated the current Board appeal) finding that the symptoms in Dr. Rothburd's report described Mr. King's "personality disorder and [] VA does not consider personality disorder[s] a service[-]connected disability." R. at 213.

In August 2010, the Board issued a decision finding that the January 1973 regional office decision did not contain clear and unmistakable error. Mr. King appealed that decision to the Court.

In June 2011, the Court granted the parties' joint motion for remand. The parties agreed that a remand was necessary because the August 2010 Board erred by applying the rating criteria for psychoneurotic, rather than psychotic, disorders.

In January 2012, the Board issued the decision on appeal, again finding that the January 1973 regional office decision did not contain clear and unmistakable error. This appeal followed.

## III. ANALYSIS

### A. Nature of a Motion to Revise on the Basis of Clear and Unmistakable Error

This case presents the Court with the opportunity to discuss and reiterate in some detail our jurisprudence concerning clear and unmistakable error. At the outset, the Court emphasizes that clear and unmistakable error is "a very specific and rare kind of error," and the burden of demonstrating clear and unmistakable error is an onerous one. 38 C.F.R. § 20.1403 (2013); *see Berger v. Brown*, 10 Vet.App. 166, 169 (1997) ("[T]he appellant, who always bears the burden of persuasion on appeals to this Court, bears an extra-heavy burden when the appeal is a collateral attack, in the form of [clear and unmistakable error] . . . . A final decision is entitled to a strong presumption of validity."). The Court has emphasized that "an assertion of clear and unmistakable error is a *motion or a request*, rather than a claim." *Hillyard v. Shinseki*, 24 Vet.App. 343, 355 (2011). A "claim" is "a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit." 38 C.F.R. § 3.1(p) (2013). An "informal claim" is "[a]ny communication or action, indicating an intent to apply for one or more

4

benefits." 38 C.F.R. § 3.155(a) (2013). *See Roebuck v. Nicholson*, 20 Vet.App. 307, 312–13 (2006) (defining a claim as "an application for entitlement to a VA benefit based on a current disability."). "Because a motion to revise based on clear and unmistakable error requests revision of a prior final decision, rather than entitlement to a benefit based on a current disability, there can be no 'claim' for clear and unmistakable error." *Hillyard*, 24 Vet.App. at 355.

Although much of the Board's discussion in its decision on appeal necessarily related to the January 1973 regional office decision, it is the 2012 Board decision that is under review. The Court must determine whether the 2012 Board decision that denied Mr. King's motion to revise the 1973 regional office decision on the basis of clear and unmistakable error was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, or unsupported by adequate reasons or bases. *See Hillyard*, 24 Vet.App. at 349; *Eddy v. Brown*, 9 Vet.App. 52, 57 (1996).

### B. Due Process Argument

Mr. King asserts that the Board violated his "due process right to fair adjudication of his claim for disability benefits pursuant to *Cushman v. Shinseki*, 576 F.3d. 1290 (Fed. Cir. 2009)." Appellant's Brief (Br.) at 12. Specifically, he contends that the regional office failed in 1973 to consider Dr. Rothburd's opinion, thereby "violat[ing] . . . his constitutional right to a fair hearing of his claim." *Id.* at 14. In *Cushman*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) concluded that "a veteran alleging a service-connected disability has a due process right to fair adjudication of his claim for benefits." *Cushman*, 576 F.3d. at 1292. *Cushman* involved an appeal from a Board decision that relied on a VA medical record that the Secretary admitted was impermissibly altered to deny the appellant a total disability rating based on individual unemployability. *Id.* at 1294-95. The Federal Circuit concluded that "consideration of the altered document instead of the unaltered document in adjudicating [the appellant's] claim was a violation of his constitutional right to a fair hearing." *Id.* at 1300. Because "[t]he source of the fundamental unfairness that tainted the initial evaluation of Mr. Cushman's claim was never removed . . . none of the subsequent appeals and rehearings that Mr. Cushman received satisfied his due process rights to a fair hearing on the merits of his disability claim." *Id.* at 1299.

Here, unlike in *Cushman*, there is no indication that the document at issue, Dr. Rothburd's August 1972 examination report, was impermissibly altered. Further, although Mr. King contends

that the regional office in 1973 never considered Dr. Rothburd's examination report in rendering its decision, he cites no evidence that the regional office intentionally or unintentionally concealed or refused to consider that report or that VA otherwise failed to accord him due process. As discussed in greater detail later in this decision, failure to mention evidence in a decision made before February 1990 does not mean that the evidence was not considered. *See Eddy*, 9 Vet.App. at 58 (holding that "silence in a final [regional office] decision made before February 1990 cannot be taken as showing a failure to consider evidence of record").

More importantly, however, Mr. King fails to explain why any alleged error of this type, that is, failure to consider certain evidence, could not be addressed and potentially cured by his clear and unmistakable error motion to revise the January 1973 decision. After all, clear and unmistakable error may be based on an allegation of factual error. *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc). The Court therefore holds that "there is no due process issue since, unlike the situation in *Cushman*, the statutes and regulations provide adequate remedy for any error that occurred in prior proceedings." *Guillory v. Shinseki*, 603 F.3d 981, 987-88 (Fed. Cir. 2009); *see Prinkey v. Shinseki*, 735 F.3d 1375, 1384 (Fed. Cir. 2013) ("[VA] in adjudicating his claim, gave him all the process that is constitutionally required. It afforded him repeated opportunities to challenge the . . . medical opinions as deficient, in evidentiary foundation or in explanation, and to submit his own contrary evidence. . . . Whatever due process requires, it requires no more than that.").

### C. Clear and Unmistakable Error in the January 1973 Regional Office Decision

Preliminarily, Mr. King asserts that the January 1973 regional office decision contains clear and unmistakable error because the VA examination on which the regional office relied "did not contain findings on both [Mr. King's] social and industrial adaptability [] sufficient to allow the rating agent to make a correct disability rating." Appellant's Br. at 8. In substance, his argument is that VA failed to satisfy its duty to assist, in that it relied on an inadequate medical examination. As this Court has made clear, "VA's breach of the duty to assist cannot form a basis for a [motion for revision based on] [clear and unmistakable] error because such a breach creates only an incomplete rather than an incorrect record." *Caffrey v. Brown*, 6 Vet.App. 377, 384 (1994); *see also Cook v. Principi*, 318 F.3d 1334, 1344–47 (Fed. Cir. 2002) (holding that a breach of the duty to assist cannot

6

form the predicate for a motion for revision of a finally decided claim based on clear and unmistakable error).  Consequently, Mr. King's argument is unpersuasive.

Mr. King next asserts that Dr. Rothburd's 1972 report, even though in the possession of VA four months before the 1973 rating decision, was not before the regional office adjudicator, as evidenced by the fact the January 1973 regional office rating decision is silent as to its existence. More specifically he argues that "the inclusion of Dr. Rothburd's report in the evidence considered by the [regional office] in 1973 would have painted a truer picture of [his] disability, resulting in a disability rating far in excess of 10%." Appellant's Br. at 10.  Mr. King further asserts that the Board did not correctly interpret and apply the term "undebatable." Specifically, he contends  that "there were two critical medical assessments of [Mr. King]: the one the [regional office] based its decision on and the one of Dr. Rothburd which was not considered . . . [and] if the missing doctor's report had been considered, a reasonable person's assessment would be considerably different." Appellant's Br. at 15.  These arguments are unpersuasive.

*1. Requirements for Establishing Clear and Unmistakable Error in a Prior Final Decision*

A prior final regional office decision must be reversed or revised where evidence establishes clear and unmistakable error.  *See* 38 U.S.C. § 5109A(a); 38 C.F.R. § 3.105(a) (2013).  Under this Court's long-standing precedent, clear and unmistakable error is established when the following conditions are met:  First, either (1) the correct facts in the record were not before the adjudicator or (2) the statutory or regulatory provisions in existence at the time were incorrectly applied. *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994).  Second, the alleged error must be "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell*, 3 Vet.App. at 313-14.  Finally, the commission of the alleged error must have "manifestly changed the outcome" of the decision being attacked on the basis of clear and unmistakable error at the time that decision was rendered. *Id.*; *see Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting "manifestly changed the outcome" language in *Russell*).  Because the January 2012 Board decision determined that Mr. King did not establish that the January 1973 regional office decision was the product of clear and unmistakable error, Mr. King now carries the burden of demonstrating that the Board's 2012 findings were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law,

7

or unsupported by adequate reasons or bases. *See Hillyard*, 24 Vet.App. at 349; *Eddy*, 9 Vet.App. at 57.

## 2. Facts Before the Adjudicator

Relying on *Bouton v. Peake*, 23 Vet.App. 70 (2008), Mr. King asserts that the regional office's failure to specifically mention Dr. Rothburd's opinion in its 1973 rating decision is proof positive that it failed to consider that report when assigning his 10% disability rating. This argument is unpersuasive.

There is no question that the January 1973 regional office decision did not expressly reference Dr. Rothburd's opinion. This, however, cannot be taken as proof that the regional office did not consider that opinion. Prior to February 1990, VA regional offices were not required to provide a statement of reasons or bases for their decisions, and the Federal Circuit has held that regional office decisions prior to that date are presumptively valid, even in the absence of such discussion. *See Natali v. Principi*, 375 F.3d 1375, 1380 (Fed. Cir. 2004) (holding that statements of reasons or bases in the regional offices' decisions were not required prior to "the Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, 103 Stat.2062 (1988), which added the statutory provision mandating that decisions denying benefits include a statement of the reasons for the decision"); *see also Eddy*, 9 Vet.App. at 58 (holding that "silence in a final [regional office] decision made before February 1990 cannot be taken as showing a failure to consider evidence of record"). Accordingly, "to establish [clear and unmistakable error] in a pre-February-1990 [regional office] decision, it must be clear from the face of that decision that a particular fact or law had not been considered in the [regional office's] adjudication of the case." *Joyce v. Nicholson*, 19 Vet.App. 36, 46 (2005). There is no indication on the face of the January 1973 rating decision that the regional office did not consider Dr. Rothburd's opinion, and the Court cannot conclude that it failed to do so on the basis of silence alone. *See Eddy*, 9 Vet.App. at 58.

Contrary to Mr. King's argument, *Bouton* does not change this analysis. In that case, the Court concluded that the Board erred in finding that the regional office "engaged in a simple weighing of the evidence" because it was clear that the regional office "denied the existence of evidence in the claims file that did indeed exist." 23 Vet.App. at 71 (regional office decision stated that "*[t]here is no record of* psychiatric disability to include post-traumatic stress disorder showing

8

a chronic disability subject to service connection" when the record contained evidence of ongoing depression that was, at least in part, secondary to a service-connected back condition (emphasis added)). Thus, in *Bouton*, it was not the failure on the part of the regional office to specifically *mention* evidence of record, but rather the fact that the regional office *denied outright* the existence of favorable evidence. *Id*. That is not the case here.

Mr. King also contends that the Board conceded that the regional office in 1973 did not consider Dr. Rothburd's report. This argument also fails. Although the Board admits that "the [regional office] did not acknowledge the existence of evidence in the record" (R. at 13) and, indeed, discusses *Bouton*, it does not, when read closely, contain a finding that the regional office in 1973 did not consider Dr. Rothburd's report. Rather, the best that can be said is that the Board decision proceeded under the premise that *even if* the purported error occurred and Dr. Rothburd's opinion was not considered by the adjudicator in 1973, absent that error it was not undebatable that the regional office decision would have manifestly changed. R. at 13. Accordingly, the Court is not persuaded that the Board concluded that the regional office failed to consider Dr. Rothburd's report but, even if it had, as explained below, that conclusion would not necessarily constitute clear and unmistakable error. *See* 38 U.S.C. § 7261(a)(3)(A); *Eddy*, 9 Vet.App. at 57.

### 3. Manifest Change in the Outcome

Assuming for the sake of argument that the regional office in 1973 failed to consider Dr. Rothburd's opinion, Mr. King also fails to persuade the Court that the Board's determination that Dr. Rothburd's statement would not have manifestly changed the outcome of the regional office decision is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, or unsupported by adequate reasons or bases. *See Hillyard*, 24 Vet.App. at 349. The Board rested its decision on the final prong of the *Russell* test: whether consideration of Dr. Rothburd's report would "manifestly change[] the outcome" of the decision being attacked on the basis of clear and unmistakable error at the time that decision was rendered. *Russell*, 3 Vet.App. at 313; *see Bustos*, 179 F.3d at 1380.

In the decision on appeal, the Board stated:

> The Board recognizes [Mr. King's] contention and his characterization of [the issue:] that is, he is not in disagreement with the weight the 1973 [regional office] gave the evidence, but rather is contending that they simply did not consider relevant evidence . . . . [However,] the crux of this claim is [whether] it is undebatable that

Dr. Rothburd's August 197[2] report would result in a conclusion that the evidence "militated in support of the claim" for a disability rating in excess of a 10 [%] disability rating. The Board finds that the evidence is not undebatable.

The probative value of the August 1973 VA narrative summary is not discounted by Dr. Rothburd's report to the degree where the Board can find that "all evidence at the time of the decision 'militated in support of the claim.'" The [regional office] could have found the narrative summary persuasive in that [Mr. King] was able to have relationships, however superficial, with others that discounted Dr. Rothburd's opinion. The Board cannot find that "but for" Dr. Rothburd's opinion, it is absolutely clear that a different result would have ensued. Therefore, the error complained of cannot be, *ipso facto*, clear and unmistakable.

R. at 14.

"[T]o prove the existence of [clear and unmistakable error] . . . , the claimant must show that an *outcome-determinative* error occurred." *Bustos*, 179 F.3d at 1381 (emphasis added). Thus, a manifest change in the outcome of the adjudication means that, absent the alleged clear and unmistakable error, the benefit sought would have been granted at the outset. *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993) ("[E]ven where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable."); *see also Crippen v. Brown*, 9 Vet.App. 412, 421 (1996) (holding that, when a decision is attacked on the basis of clear and unmistakable error, "the Board would have to decide whether, *had the error not been made*, the outcome after reopening—that is, *on the merits*—would have 'manifestly' been changed"); *Mason v. Brown,* 8 Vet.App. 44, 53 (1995) (holding that the Board must consider whether "the correction of the error would have [manifestly] changed the outcome—that is, that *service connection would have resulted had the lay statements been considered*.").

A manifest change is not, for example, whether the regional office would have been required to send the medical report back to Dr. Ross for clarification, but rather that Mr. King undoubtedly would have been granted a disability rating greater than 10% for his schizophrenia. In short, the Board addressed the probative value of Dr. Rothburd's August 1972 opinion but determined that, even had the regional office considered that opinion in 1973, the evidence of record would not have

been so unequivocal that the outcome would undoubtedly be different and, therefore, that the failure to consider it is not clear and unmistakable error.  R. at 14.

Finally, Mr. King argues that "the VA medical examiner's report on which the [January 1973] VA regional office based its decision was insufficient to determine a correct disability rating because the medical examiner's report did not contain findings on both [Mr. King's] social and industrial adaptability."  Appellant's Br. at 14.   This may be construed as an argument that VA failed to satisfy its duty to assist and that it relied on an inadequate medical examination.  As this Court has made clear ,"VA's breach of the duty to assist cannot form a basis for a [motion for revision based on] [clear and unmistakable] error because such a breach creates only an incomplete rather than an incorrect record."  *Caffrey*, 6 Vet.App. at 384; *see also Cook*, 318 F.3d  at 1344-47 (holding that a breach of the duty to assist cannot form the predicate for a motion for revision of a finally decided claim based on clear and unmistakable error).

Mr. King's argument may also be parsed as an allegation that the Board incorrectly applied the statutory or regulatory provisions in existence at the time because it ignored that part of the rating criteria that required assessment of *industrial* impairment–which was contained solely in Dr. Rothburd's report–and focused only on *social* impairment.  Appellant's Br. at 14.  Nonetheless, there is still no evidence that, had the purported error not occurred, the outcome of the decision would have manifestly changed.  Mr. King admits as much because he asserts that "[i]t is . . . reasonable to conclude that, had Dr. Rothburd's report been included in the evidence considered by [the regional office], the [a]ppellant would have been awarded a disability rating far in excess of 10%."  Appellant's Br. at 7.  Whether it is reasonable to conclude that the outcome would have been different is not the standard that must be met for a motion alleging clear and unmistakable error to succeed.  The governing law requires that the error be "undebatable" and that the commission of the alleged error must have "manifestly changed the outcome" of the decision. *See Russell*, 3 Vet.App.at 313. As explained above, that is not the case here.  Therefore, the Court cannot conclude that the Board's 2012 findings were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, or that those findings were unsupported by adequate reasons or bases. *See Hillyard* and *Eddy*, both *supra*.

## IV. CONCLUSION

Although the Court is sympathetic to Mr. King's arguments raised on appeal, revision of a final Board or regional office decision is an extraordinary event. The Court cannot review a motion to revise a prior, final decision under the same standard by which it reviews matters on direct appeal. As a result, there will be times when the Court arrives at a different conclusion when reviewing a motion to revise a prior, final decision than it would have had the matter been reviewed under the standards applicable on direct appeal. Mr. King, at the time of the 1973 regional office decision, was afforded the benefit of the full panoply of rights that exist when a claim is initially adjudicated, and principles of finality preclude him from invoking those rights at this time. The Court cannot say whether it would reach the same result had this case come before it on direct appeal but, on review of his motion based on clear and unmistakable error, Mr. King has not demonstrated that the Board's assessment is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, *see* 38 U.S.C. § 7261(a)(3)(A), or otherwise inadequately explained, *see* 38 U.S.C. § 7104(d)(1).

Accordingly, the January 11, 2012, Board decision is AFFIRMED.