# United States Court of Appeals for the Federal Circuit

---

**MARK W. SMITH,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-2169

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-8633, Judge Joseph L. Toth.

---

Decided: May 20, 2024

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

REBECCA SARAH KRUSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., BRENDAN DAVID JORDAN, PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, LINN, and STOLL, *Circuit Judges.*

LINN, *Circuit Judge*

Mark W. Smith ("Smith"), a United States Navy veteran, appeals the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the denial by the Board of Veterans Appeals ("Board") of Smith's motion to revise a prior Board decision on the basis of clear and unmistakable error ("CUE"). Because the Veterans Court did not legally err in interpreting the CUE standard in 38 C.F.R. § 20.1403, we affirm.

## BACKGROUND

Smith began his service in the Navy in 1986. In October of 1991, he was diagnosed with deep vein thrombosis ("DVT")[1] and was discharged as no longer physically fit for duty. Soon thereafter, a service treatment record noted that his DVT was resolved. Smith later filed a claim for service connection for DVT. In January 1992, the Regional Office ("RO") of the Department of Veterans Affairs ("VA") denied his request. Smith appealed to the Board.

The Board affirmed the denial of service connection in 1996. J.App'x at 22–34 ("1996 Board Decision"). It held that Smith's claim for service connection was not well-grounded because "there is no medical evidence to show that he currently has [DVT]." *Id.* at 30.[2] Smith did not appeal the Board's decision, and it became final.

---

[1]    Deep vein thrombosis occurs when a blood clot forms in a deep vein in the body; it can cause leg pain and swelling.

[2]    During the pendency of Smith's original claim, veterans had the burden of submitting evidence that their claims were well-grounded. 38 U.S.C. § 5107(a) (1994).

In October of 2012, Smith filed a new claim for service connection for DVT, and in October of 2013, the VA granted service connection with a 40% disability rate and an effective date of October 31, 2012.

In 2016, Smith filed a motion seeking to revise the 1996 Board Decision, alleging that the 1996 Board's determination that his claim was not well-grounded was tainted by CUE. He argued that there was enough evidence in front of the 1996 Board that showed extant DVT, including Physical Evaluation Board ("PEB") reports, to have overcome the well-grounded threshold. He thus asserted that his claim should have been allowed to proceed aided by the VA's duty to assist. The Board denied his motion. J.App'x at 42–49. Smith appealed to the Veterans Court. Subsequently, Smith and the Secretary filed a joint motion for remand for the Board to consider whether the PEB reports from 1991 and 1994 were probative of a diagnosis of DVT.

On remand, the Board issued the 2020 Board Decision now on appeal, again denying a CUE revision for the 1996 Board Decision. *In re Smith*, No. 22-2169 (B.V.A. Sept. 4, 2020) ("2020 Board Decision"), J.App'x at 106–19. The 2020 Board agreed with Smith that because there was some evidence that supported his claim, the Board's dismissal of his claim in 1996 as not being well-grounded was incorrect. Nonetheless, the Board held that the error was insufficient to support CUE. Given the presence of evidence on both sides of the question, the Board could not

---

This requirement conditioned the VA's duty to assist upon whether the veteran presented a well-grounded claim. *Nolen v. Gober*, 222 F.3d 1356, 1360 (Fed. Cir. 2000). On November 9, 2000, Congress amended § 5107(a), removing the well-grounded claim requirement. *See* 38 U.S.C. 5107(a) (2000).

conclude "that it was absolutely clear that the Veteran *did* have a diagnosis of DVT." *Id.*, J.App'x at 115.

On appeal, the Veterans Court affirmed the denial of CUE. *Smith v. McDonough*, No. 20-8633, 2022 WL 1719119 (Vet. App. May 27, 2022) ("Veterans Court Decision") (unreported). The Veterans Court agreed with Smith and the Board that the finding that Smith's claim was not well-grounded was wrong, given the presence in 1996 of evidence on both sides of the question. The Veterans Court also agreed that the Board in 1996 "should have allowed the claim to move forward." *Id.* at *3. The Veterans Court nonetheless concluded that this error did not constitute CUE because the record was not "manifestly clear that the veteran had a current disability" at the time of the 1996 Board Decision. *Id.* Because Smith could not show that correcting the well-groundedness error "would have resulted in a grant of service connection for that condition," he failed to make out a claim for CUE. *Id.* (citing *King v. Shinseki*, 26 Vet. App. 433, 441 (2014)). Smith appeals.

## DISCUSSION

Smith argues that the Veterans Court legally erred in interpreting 38 C.F.R. § 20.1403 by limiting CUE-eligible errors to those that manifestly changed the outcome "with respect to the merits of the underlying claim" and, specifically, limiting CUE-eligible errors to those in which "but for an alleged error, service connection would have been awarded." Veterans Court Decision, at *1, *3.

The Secretary first responds that we lack jurisdiction because the Veterans Court did not *interpret* the regulation or "elaborate[]" on the meaning of the statute or regulation. *See Forshey v. Principi*, 284 F.3d 1335, 1349 (Fed. Cir. 2002) (en banc) ("[A]n interpretation of a statute or regulation occurs when its meaning is elaborated by the court."), *superseded on other grounds by statute*, Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (2002). Instead, the

Secretary argues that the Veterans Court merely applied well-settled legal rules to a particular factual scenario and whether the Veterans Court correctly applied the regulation to the facts of this case falls outside our jurisdiction. On the merits, the Secretary argues that the Veterans Court correctly required Smith to show an error that manifestly changed the *outcome* of Smith's claim for service connection.

I

We first consider our jurisdiction. Under 38 U.S.C. § 7292(c), this court has exclusive jurisdiction to review "any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section." This includes review of "all relevant questions of law" and "any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon" by the Veterans Court that is, inter alia, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 7292(d)(1). In cases that do not implicate constitutional rights, our review does *not* extend to factual determinations or to "a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2).

As noted above, the Secretary argues that the Veterans Court here merely applied the CUE regulation without interpretation. Smith responds that the Veterans Court did interpret 38 C.F.R. § 20.1403 by equating "manifestly different outcome" with "grant of service connection," thus limiting the types of errors cognizable under the regulation.

Here, the Veterans Court first stated that a CUE claim requires a claimant to "show that the error in question manifestly changed the outcome," then added the interpretive gloss that the error must "manifestly change[] the outcome *with respect to the merits of the underlying claim.*" Veterans Court Decision, at *1 (emphasis added). It further interpreted that language as requiring a claimant to

show that, "but for an alleged error, service connection would have been awarded." *Id.* The Veterans Court then relied upon this standard to deny Smith's CUE claim.

We consider the Veterans Court's gloss to be an elaboration of the regulation. The correctness of that elaboration is, thus, a question of regulatory interpretation, over which we have jurisdiction under § 7292(d)(1). *See Yates v. West*, 213 F.3d 1372, 1374 (Fed. Cir. 2000) (holding that the question of whether clear and unmistakable error at the RO requires "a manifest error that would have changed the outcome of the decision . . . raises a challenge concerning the interpretation of the 'clear and unmistakable error' regulation that was relied on" by the Veterans Court).

We turn to the merits.

## II

## A

When a Board decision is *not* appealed, as the Board's 1996 Decision here, it ordinarily becomes "final," and "not subject to review." 38 C.F.R. § 20.1100. A limited statutory exception to the finality of a Board decision allows a collateral attack based on "clear and unmistakable error" ("CUE"). 38 U.S.C. § 7111. The relevant VA regulation sets the standard for CUE:

> (a) General. Clear and unmistakable error is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that *the result would have been manifestly different but for the error*.
>
> . . .
>
> (c) Errors that constitute clear and unmistakable error. To warrant revision of a Board decision on the grounds of clear and unmistakable error, there

> must have been *an error in the Board's adjudica-tion of the appeal which, had it not been made, would have manifestly changed the outcome* when it was made. If it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable.

38 C.F.R. § 20.1403(a), (c) (emphases added). The regulation also expressly excludes "[t]he Secretary's failure to fulfill the duty to assist" as a basis for CUE. *Id.* § 20.1403(d)(2).

B

Smith contends that the Veterans Court incorrectly interpreted 38 C.F.R. § 20.1403 to require that but-for the error, the veteran would have been awarded service connection. *See* Veterans Court Decision at *1. Smith argues that the regulation does not limit the outcomes affected by CUE to changes to the ultimate determination of service connection. He contends that a change in the course of proceedings that *may* change the ultimate award of service connection may suffice as a manifest change in the outcome. Smith therefore argues that allowing his claim to proceed to a merits determination after triggering the VA's duty to assist would have met the only test set forth in the regulation. *See Smith v. McDonough*, No. 2022-2169, Oral Argument at 4:25–4:40 (Fed. Cir. Mar. 8, 2024) available at <https://oralarguments.cafc.uscourts.gov/default.aspx?fl=222169_03082024.mp3> (last accessed May 15, 2024).

The Secretary disagrees. According to the Secretary—and referring to the language of the regulation—an error that "manifestly changed the outcome" must have changed the "Board's adjudication of the appeal." The Secretary asserts that the Veterans Court here applied the correct legal standard in asking whether the 1996 Board's error holding Smith's claim to be not well-grounded would have "manifestly changed the outcome" of Smith's claim for service

connection. Veterans Court Decision at *2–3. Further, the Secretary argues that the Veterans Court was correct to cite to *King*, which cited and applied the standard in *Bustos* and § 20.1403 for its articulation of the "manifestly changed" outcome and "outcome determinative" test. 26 Vet. App. at 437, 439–41.

We agree with the Secretary. For the reasons more fully set forth, *infra*, the "manifestly different" outcome standard of 38 C.F.R. § 20.1403 cannot be met by correcting an error that leads only to continued litigation with an uncertain result on the merits of the claim. We therefore conclude that the Veterans Court properly interpreted the regulation in affirming the 2020 Board's Decision.

First, the regulation requires not just a manifestly different result, but an error "in the Board's adjudication of the appeal" that would have "manifestly changed the outcome." 38 C.F.R. § 20.1403(c). It would be a strained reading of the language of the regulation to interpret it to cover a situation in which the only thing that was changed was the procedural path to an adjudication that might remain unchanged.

Second, Smith's argument here essentially mirrors the argument we rejected in *Bustos*. *Bustos* addressed the VA regulation governing CUE at the RO, but the holdings are equally applicable to the key language here: "manifestly change[] the outcome." *See Yates*, 213 F.3d at 1375 (noting that the regulations at 38 C.F.R. § 20.1403 "are consistent with our holding in *Bustos*"). Smith's briefing does not contest the applicability of *Bustos* to the standard for CUE at the Board or identify any dispositive difference between the regulation governing CUE at the Board and the regulation governing CUE at the RO at issue in *Bustos*.

In *Bustos*, we considered what effect an error must have on the outcome of a case in order for it to be considered clear and unmistakable error. 179 F.3d 1378 (Fed. Cir. 1999). Bustos, an Army veteran, filed a claim for service

connection for post-traumatic stress disorder ("PTSD") and alcohol and substance abuse. *Id.* at 1379. He was initially denied service connection for PTSD and alcohol and substance abuse, the latter because of his prior history of such abuse. He eventually received a 100% disability rating for PTSD, but the VA maintained its denial of service connection for alcohol and substance abuse in a 1998 RO decision. *Id.* After the decision had become final, he brought a CUE claim, arguing that the RO erroneously failed to award entitlement to service connection for drug and alcohol abuse as secondary to PTSD and failed to consider certain evidence supporting his position. *Id.* The Veterans Court held that, "even if the premise of error is accepted"—that the RO erred and should have considered his entitlement to service connection for drug and alcohol abuse secondary to PTSD— "if it is not absolutely clear that a different result would have ensued, the error is not CUE." *Id.* at 1379. In Bustos's case, the court held that even if the evidence had been considered, it would have "merely put the evidence in equipoise [and] would not have 'manifestly changed' the outcome of his original rating decision." *Id.*

On appeal, Bustos argued that the Veterans Court applied too strict a standard for CUE by requiring a manifestly different result. Rather, he argued, CUE only requires a veteran to show that an RO error "might possibly change the outcome" and that the error "seriously affects the fairness, integrity, or public reputation of the proceedings." *Id.* at 1380. This court held that this was not enough: "CUE must be outcome-determinative," such that the error must have a "dispositive impact on the ultimate outcome" of the veteran's claim. *Id.* at 1381 ("We therefore hold that, to prove the existence of CUE as set forth in § 3.105(a), the claimant must show that an outcome-determinative error occurred, that is, an error that would manifestly change the outcome of a prior decision."); *Yates*, 213 F.3d at 1374–75 (same). Because the evidence of Smith's entitlement to service connection for drug and

alcohol abuse as secondary to PTSD was, at best, in equipoise (based on the Veterans Court's holding), the RO's error in failing to consider Bustos's argument and evidence on that point was not "outcome-determinative" and therefore could not support CUE at the RO. *Bustos*, 179 F.3d at 1380–81.

Similarly, here, Smith cannot support CUE by identifying the continuation of his claim as the "manifestly different outcome." While allowing his claim to proceed would be a change in the course of proceedings that *may* lead to a change in the outcome, that is not enough. CUE requires that it would be "absolutely clear," 38 C.F.R. § 20.1403(c), that correcting the error would lead to a *manifestly different* outcome, not merely a *potentially* different outcome.

Third, the regulation expressly excludes the VA's failure to fulfill the duty to assist from being the kind of "outcome" or "result" that can itself support CUE. As an example of an error that is *not* CUE, the regulation lists: "The Secretary's failure to fulfill the duty to assist." *Id.* § 20.1403(d)(2). Here, the only definitive effect of correcting the erroneous well-groundedness determination would have been to trigger the duty to assist. Because failing to fulfill the duty to assist is not an outcome-determinative error, neither is the failure to trigger the duty to assist.

CUE is a "very specific and rare kind of error." 28 C.F.R. § 20.1403(a). It is not intended to vindicate all mistakes. "The modifiers 'clear' and 'unmistakable' indicate that [CUE] is a narrow category excluding some forms of error cognizable in other contexts." *George v. McDonough*, 596 U.S. 740, 746 (2022). Whereas a direct appeal allows reversal or vacatur upon a showing of *any* harmful legal, factual, or procedural error, CUE is not intended to serve as an opportunity to continue litigation leading to an uncertain result. We hold that a revision or reversal based on CUE—as a collateral attack on an already final

adjudication—requires an error that once corrected alters, with absolute clarity, the merits outcome of a veteran's claim.

The Veterans Court in this case applied the correct legal standard for CUE. It required Smith to show, in addition to showing error in the 1996 Board's Decision, that "had the error not been made, the outcome would have been manifestly different." Veterans Court Decision at *2 (citing *George v. Wilkie*, 32 Vet. App. 318, 323 (2020)). The substantive right Smith sought to vindicate was the right to service connection as of the 1996 Board decision. It was thus not error for the Veterans Court to require Smith to show that correcting the 1996 Board's error would have compelled the conclusion "to which reasonable minds could not differ," 38 C.F.R. § 20.1403(a), that Smith would have been awarded service connection.

## CONCLUSION

For the foregoing reasons, the Veterans Court's decision is affirmed.

### **AFFIRMED**

## COSTS

Each party shall bear its own costs.